**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

JOHN BUMGARNER, )
          Plaintiff, )
v. )   Case No. 16-CV-26-GKF-FHM
)
THE WILLIAMS COMPANIES, INC., and )
ENERGY TRANSFER EQUITY, L.P., )
)
          Defendants. )

**OPINION AND ORDER**

Before the court are the motions, filed by defendants The Williams Companies, Inc. ("Williams") and Energy Transfer Equity, L.P. ("ETE"), to dismiss the Second Amended Class Action Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. [Dkt. ##68-69]. Plaintiff John Bumgarner ("Bumgarner") brings this action to enjoin the defendants from further proceeding with a proposed merger. In his Second Amended Complaint, brought for himself and for members of a proposed class of Williams shareholders, Bumgarner alleges defendants and their representatives made false or misleading representations or omissions when soliciting proxies for the shareholder vote on the proposed merger, in violation of § 14 of the 1934 Securities Exchange Act, 15 U.S.C. § 78n. Defendants move to dismiss, arguing that the statements fall under a safe harbor for forward-looking statements in 15 U.S.C. § 78u-5(c) and that Bumgarner has not alleged sufficient facts to support a claim that the alleged omissions amount to a securities violation.

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief can be granted. A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007). The plausibility requirement "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" of the conduct necessary to make out the claim. *Id.* at 556. "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (quotations omitted). The court "must determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007).

Section 14(a) of the Securities and Exchange Act forbids proxy solicitations that contravene the rules and regulations of the Securities and Exchange Commission ("SEC"). 15 U.S.C. § 78n(a)(1). One of those rules, Rule 14a-9[1], prohibits proxy solicitations by means of any communication containing false or misleading statements or omissions that are material to the proxy solicitation. 17 C.F.R. § 240.14a-9. A plaintiff claiming a violation of § 14(a) by way of Rule 14a-9 must establish three elements: (1) the proxy statement contained a material misrepresentation or omission; (2) the defendant acted with the requisite state of mind; and (3) the proxy statement was the essential link in completing the transaction at issue. *See In re Zagg Securities Litigation*, 2014 WL 505152, *7 (D. Utah 2014) ("*Zagg I*"); *see also Lane v. Page*, 581 F.Supp.2d 1094, 1111 (D.N.M. 2008).

In the Second Amended Complaint, Bumgarner alleges the defendants initially communicated to shareholders that the proposed merger would result in an estimated $2 billion

---

[1] Bumgarner does not explicitly invoke Rule 14a-9 in the Second Amended Complaint. Defendants have characterized the Second Amended Complaint as alleging a violation of § 14(a) by way of violating Rule 14a-9. Bumgarner has not objected to this characterization.

2

in synergies, but later reduced that estimate twice—to $170 million and then to $126 million. The court previously determined that such projections are "forward-looking statements" that fall under 15 U.S.C. § 78u-5, a statutory "safe harbor." [Dkt. #58, pp. 4-9]. In response to the motions to dismiss, Bumgarner concedes the estimates themselves are not actionable under the court's prior ruling, but argues the § 14(a) claim in the Second Amended Complaint is based on a different statement explaining the reduced estimates. The Second Amended Complaint alleges defendants explained the reductions in this way in an amended S-4 on January 12, 2016:

> HOWEVER, [Williams] BELIEVES THAT THE ABOVE PROSPECTIVE FINANCIAL INFORMATION IS NO LONGER VALID BECAUSE IT WAS PREPARED SEVERAL MONTHS PRIOR TO THE DATE OF THIS PROXY STATEMENT/PROSPECTUS, AND SINCE SUCH TIME THE INDUSTRY IN WHICH [Williams] AND ETE OPERATE HAS BEEN UNDER PRESSURE AS A RESULT OF LOWER COMMODITY PRICES AND HIGHER COSTS OF CAPITAL. SEE THE SECTION TITLED "SUMMARY – RECENT DEVELOPMENTS.

Bumgarner alleges this statement is a negligent misrepresentation in violation of § 14(a). He alleges the reduction in estimated synergies was necessary—not because of "lower commodity prices and higher costs of capital"—but because Williams and ETE were negligent in their $2 billion projection because of specific "physical limitations" that made the $2 billion projection unattainable.[2] [*See* Dkt. #61, ¶¶ 19-22, pp. 9-12]. In addition, Bumgarner alleges commodity prices had already declined significantly by the time Williams and ETE made their representations of $2 billion in synergies. Thus, Bumgarner contends defendants' explanation—that the reduced estimates were based on commodity pricing and cost of capital—is false and

---

[2] For example, Bumgarner alleges that the projection of $2 billion in annual synergies was based in part on anticipated synergies of $160 million to be obtained by connecting ETE's Transwestern pipeline system with Williams's Northwest pipeline system. [*Id.* at pp. 11-12]. Bumgarner alleges the two systems are already connected. [*Id.*].

3

misleading in itself because a reasonable investor would be led to believe that if commodity pricing and the cost of capital improve, the $2 billion in synergies may return.

Defendants argue the explanation for the reduced synergies estimates is subject to the same safe harbor as the estimates themselves because the safe harbor applies, not only to forward-looking statements, but to statements supplying the *basis* for forward-looking statements. However, defendants' explanation does not fit in this category. Defendants cite commodity pricing and higher costs of capital not as the basis for a forward-looking projection, but as justification for a revision that has already occurred. Defendants' explanation for reducing the projected synergies is a statement of existing fact and may be verified based on information now available. This is no less true because defendants' statement attempts to explain changes made to other statements that are themselves forward-looking. Thus, the rationale behind the safe harbor for forward-looking statements does not apply here.

Defendants also argue the explanation for the reductions in estimated synergies is immaterial. Information is material if it "significantly alter[s] the total mix of information available" to shareholders. *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1119 (10th Cir. 1997). As noted above, the court previously determined the synergies estimates were forward-looking statements under § 78u-5, and were accompanied by "meaningful cautionary statements." [Dkt. #58, p. 9]. Under the Tenth Circuit's "bespeaks caution" doctrine, "[f]orward-looking statements are . . . considered immaterial when the defendant has provided the investing public with sufficiently specific risk disclosures or other cautionary statements concerning the subject matter of the statements at issue to nullify any potentially misleading effect." *Grossman*, 120 F.3d at 1120. Defendants argue the explanation for the reductions in the synergies estimates is related to forward-looking statements that are, by law, immaterial, and thus cannot be material itself.

4

Defendants' argument is appealing, but ultimately unpersuasive. Under the facts as alleged in the Second Amended Complaint, defendants have issued three synergies projections. Those projections are immaterial—because they are forward-looking statements accompanied by adequate cautionary language—but their immateriality is not fatal to Bumgarner's claim. The explanation may be material even if the projections are not. Defendants' arguments do not support a contrary view.

First, the Second Amended Complaint states a claim based, not on the projections themselves, but rather on defendants' explanation for the revisions to the projections. As noted above, the alleged misrepresentation in defendants' explanation—attribution of the synergies reduction from $2 billion to $126 million to "lower commodity prices and higher costs of capital"—was not a forward-looking statement, but was rather a statement of then-current fact to explain the reduction. Thus, the "bespeaks caution" doctrine, which renders certain forward-looking statements immaterial, does not apply.

Second, the alleged misrepresentation significantly alters the total mix of information available to shareholders. Bumgarner alleges the explanation was misleading because, when considered along with the prior and current synergies projections, the clear implication for the shareholder audience and public is that an additional $1.874 billion in synergies will obtain—all else being equal—if commodity prices and the cost of capital return to the levels prevailing prior to the approval of the merger agreement. The only qualifications on that additional $1.874 billion in projected synergies are commodity prices and the cost of capital. As alleged, defendants' explanation contains no other cautionary language. As noted above, Bumgarner alleges defendants know there are—but omitted from their explanation—other reasons the higher synergies estimate is unattainable. Accepting the well-pleaded allegations in the Second

5

Amended Complaint as true, the total mix of information—including the synergies projections and defendants' explanation for the reductions therein —could materially mislead shareholders. Bumgarner has adequately alleged a violation of § 14(a).

Bumgarner also alleges the amended S-4 contains a material omission because it fails to disclose a conflict of interest for a Williams shareholder who may also hold an interest in ETE. Bumgarner alleges such an individual exists based on "information and belief," but the Second Amended Complaint alleges no facts in support. Under 15 U.S.C. § 78u-4(b)(1)(B), "if an allegation regarding [a] statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." Accordingly, the Second Amended Complaint does not state a claim based on a failure to disclose a conflict of interest.

In his response to the motions to dismiss, Bumgarner alternatively seeks leave to amend the Second Amended Complaint to include allegations regarding the holdings of Keith Meister— a Williams board member—and Corvex Management LP ("Corvex")—a hedge fund managed by Meister, which Bumgarner alleges held an interest in ETE. In reply, defendants argue Bumgarner has had three opportunities to state this claim. Furthermore, defendants argue Corvex's SEC filings show that it did not hold an interest in ETE at the time the Williams board voted to approve the merger agreement. Defendants' latter argument is not appropriate at the motion-to-dismiss stage, as it relies upon a description of unproduced documentation that is neither referenced in nor central to the allegations in the Second Amended Complaint. Because the court denies defendants' motion to dismiss Bumgarner's claim based on defendants' explanation for the reductions in the synergies estimate, there is little inconvenience in allowing Bumgarner to amend his claim based on the alleged failure to disclose a conflict of interest. Moreover, Bumgarner has made only one attempt to state his claim regarding Meister's alleged

6

conflict of interest, and that was in the recent Second Amended Complaint.  Bumgarner's request to amend that specific claim is granted.

Finally, Bumgarner alleges another material omission.  The 5th Amendment to the S-4 states that some Williams board members voted against the merger, but they nonetheless support the board's commitment to consummate the transaction as required by the terms of the merger agreement.  Bumgarner alleges defendants failed to disclose "how it was ascertained that the directors who voted against the transaction" nevertheless support the board's commitment to consummate the transaction.  Defendants argue Bumgarner does not dispute the truth of that disclosure.  Furthermore, defendants contend that Bumgarner's allegation falls short because he relies on truthful information contained in the proxy statement and argues that defendants must tell him more about the subject of those statements.  Defendants' argument is persuasive.  The alleged omission—the precise manner in which it was determined that the directors who voted against the transaction expressed their support for the board's commitment to the merger agreement—is insufficient to state a claim under § 14(a).  *See Erickson v. Hutchinson Tech. Inc.*, 2016 WL 310729, at *6 (D. Minn. Jan. 26, 2016); *Himmel v. Bucyrus Int'l, Inc.*, 2014 WL 1406279, at **16-17 (E.D. Wis. Apr. 11, 2014).

WHEREFORE, defendants' motions to dismiss the Second Amended Complaint for failure to state a claim [Dkt. ##68-69] are granted in part and denied in part.  Defendants' motions are denied as to Bumgarner's claim based on an alleged negligent misrepresentation or omissions in defendants' explanation for the reductions in the synergies estimate.  Defendants' motions are granted as to Bumgarner's claim based on an alleged failure to disclose a conflict of interest by a Williams board member holding an interest in ETE.  However, Bumgarner's request for leave to amend that claim is granted.  Bumgarner shall file his amendment to that claim only

no later than Friday, May 27, 2016.  Defendants' motions are granted as to Bumgarner's claim based on an alleged failure to disclose how it was ascertained that the Williams directors who voted against the transaction fully support the board's commitment to consummate the transaction as required by the terms of the merger agreement.

IT IS SO ORDERED this 26th day of May, 2016.

*Gregory K. Frizzell*
GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT